**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ENJOI TRANSPORTATION, LLC, and
PAULETTE HAMILTON,

       Plaintiffs,

v.                                    Case No. 17-13052

CITY OF DETROIT, et al.,

       Defendants.
_____/

**OPINION AND ORDER DENYING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY
JUDGMENT, GRANTING DEFENDANTS CITY OF DETROIT AND DIRKS'S MOTION
TO DISMISS OR IN THE ALTERNATIVE MOTION SUMMARY JUDGMENT, AND
GRANTING DEFENDANTS TRANSDEV AND MARTIN MOORE'S MOTION FOR
SUMMARY JUDGMENT**

       This case arises out of the breakdown of a contractual relationship between

Plaintiff Enjoi Transportation LLC ("Enjoi") and Defendant Transdev Services, Inc.

("Transdev"). In its amended complaint, Enjoi asserts 19 different claims against various

defendants that sound in contract, tort, and constitutional law. At its core, however, this

is a case alleging racial discrimination. Pending before the court are cross-motions for

summary judgment that address all of Enjoi's remaining claims. These motions have

been fully briefed, and the court held a hearing on February 8, 2019. Upon

consideration of the parties' filings and arguments, the court will deny Enjoi's motion

and grant Defendants' motions for summary judgment on all of Enjoi's claims.

# I. BACKGROUND

## A. Relevant Factual History

Unless otherwise stated, the facts related here are undisputed. Enjoi is a Detroit-based transportation services company owned and operated by Plaintiff Paulette Hamilton and her husband, Gregory Lynn. (Dkt. #56, PageID 1841.) Both Hamilton and Lynn are African American. (*Id.*)

Transdev is a privately-owned Maryland corporation. (Dkt. #54, PageID 1069–70.) Transdev was selected by Defendant City of Detroit ("Detroit") to administer Detroit's MetroLift program—a "paratransit" program offering public transportation services to residents who cannot use regular city public busing due to physical or mental disability. At the times relevant to this lawsuit, Defendant Dan Dirks served as director of Detroit's Department of Transportation ("DDOT"), and Defendant Martin Moore worked for Transdev as manager of the Detroit/Transdev contract. (Dkt. #78, PageID 2603.) Transdev subcontracted with Enjoi, among others, to provide drivers and vehicles for the MetroLift program.

### 1. Detroit MetroLift Program Request for Proposal and Bid Evaluation

In April, 2015, Detroit issued a Request for Proposal for a new provider to facilitate the MetroLift program. (Dkt. #54, PageID 1068.) The winning provider would be responsible for operating all aspects of the MetroLift program, including the reservation, customer service, and dispatch centers, on-street operations, and scheduling software. (Dkt. #54, PageID 1070.) A team of city employees, including Dirks, evaluated the bids received for the Request for Proposal. (Dkt. #56, PageID 1846.) Transdev submitted a bid which proposed subcontracting with Enjoi and three other local providers to furnish

vehicles and drivers for the MetroLift program. (Dkt. #54, PageID 1071.) Enjoi also submitted a bid for the Request for Proposal (Dkt. #60-4, PageID 2037), although none of Enjoi's claims presented here relate to the bid-selection process.[1] The evaluation committee ultimately selected Transdev's bid. In February 2016, Transdev entered into a five-year contract with the City of Detroit. (Dkt. #56, PageID 1848.) The contract was funded without any federal assistance, (Dkt. #78, PageID 2604), a fact that Enjoi concedes while also asserting, without citation to any evidence in the record, that Detroit used federal funds to buy vans for the MetroLift Program. (Dkt. #81, PageID 2737.)

In March 2016, Transdev hired Defendant Martin Moore as General Manager for the Detroit/Transdev contract. (Dkt. #54, PageID 1072.) Matthew Wood, who is not a defendant in this case, served as the Project Manager on the contract and Moore's supervisor. (*Id.* at 1085.)

## 2. Transdev/Enjoi Transportation Provider Agreement ("TPA")

As part of its contract with Defendant City, Transdev was required to "negotiate contracts with local providers" (Dkt. #56, PageID 1849), which Transdev began to do once it was awarded the contract with Detroit. (*Id.* at PageID 1850.) Transdev intended to use a new trip-routing system, known as "Ecolane," to operate the MetroLift program. (Dkt. #54, PageID 1072; Dkt. #54-13.) In June 2016, Transdev entered into a Transportation Provider Agreement ("TPA") with each of the four transportation

---

[1] The parties dispute the role Dirks played in the bid evaluation process, and Enjoi devotes considerable portions of its briefing to describing what it argues was misconduct during the bid selection process. Such facts are irrelevant, however, as none of Enjoi's claims relate to the bid evaluation process.

providers—Enjoi, Checker, Delray, and Lakeside—to supply vehicles and drivers for the MetroLift program. (Dkt. #54, PageID 1074.) Checker was the only white-owned transportation provider. (Dkt. #71, PageID 2314; Dkt. #81, PageID 2751.)

In reverent part, the Transdev/Enjoi TPA provided the following terms:

- "The term of this Agreement shall be for a five year period. . . subject to termination in accordance with Section II[.]"[2]
- "Assignment of work will be in the sole discretion of Transdev; Provider shall have no entitlement to a minimum number of trips or level of compensation. This agreement is non-exclusive."
- "Transdev reserves the right to review driver license, certification, motor vehicle records and drug/alcohol or background data at any time with reasonable advance notice and any such record shall be provided to the location General Manger or his designees within 72 hours."
- "Refusal of an Operator to submit a [drug] test, or any failure of a test shall result in immediate disqualification from providing services under this Agreement."
- "Transdev may terminate this agreement without cause upon thirty (30) days written notice to the Provider…Provider shall be obligated to continue performance of contract services in accordance with this contract up to and including the termination date[.]"
- "Prior to notice of Default, the terminating party shall give the alleged defaulter Notice of Default setting forth the circumstances of the default. Said party shall have ten (10) days to cure such default.
- "Provide shall notify the project manager or designee (by telephone or mail) upon the occurrence of any accident involving a personal injury resulting from Services provided under this Agreement. All other accidents or incidents shall be reported to Transdev within twenty-four (24) hours of their occurrence."
- "Monthly trip volumes are anticipated to remain consistent with current monthly volumes, however Transdev offers no guarantee, warranty, or other representation regarding any expectancy of future trip volume."

(Dkt. #54-16.)

The terms of the transportation contracts, including trip cost rates, were negotiated individually with each transportation provider. Each provider set its own rates for both ambulatory and non-ambulatory (e.g., a passenger who requires a wheelchair)

---

[2] According to Enjoi, as a term of contracting with Transdev, it required a 5-year term. (Dkt. #56, PageID 1850.)

trips. When Transdev launched the EcoLane system in July 2016, Enjoi had the highest rate for ambulatory trips at $20.99. (Dkt. #54, PageID 1075–76.)

Enjoi alleges through many of its numerous counts that Transdev and Dirks began plotting to terminate the Transdev/Enjoi TPA shortly after Transdev assumed responsibility for MetroLift program in July 2017. It appears that Enjoi bases this allegation on a July 28, 2018 email exchange between two non-parties to this lawsuit, Transdev Vice President, Mathew Wood, and Transdev employee, Dick Alexander. (Dkt. #86, PageID 3737.) In this email, Wood states "[O]ur most costly provider, Enjoi is failing to perform. . . In Fact, Dan gave us the OK to fire Enjoi once we are confident we can handle their work with the other providers." (Dkt. #60-21, PageID 2137.)

### 3. Enjoi's Trip Rate Adjustments

Many of Enjoi's claims against Transdev stem from Transdev's alleged manipulation of Enjoi's trip rates and volume. Enjoi alleges that Transdev manipulated criteria used by the Ecolane system to give more trips to another provider, Checker. (Dkt. #81, PageID 2782.)

Less than one month after Transdev implemented the EcoLane system, Enjoi began complaining about its trip volume. On August 1, 2016, Lynn informed Transdev that Enjoi would temporarily lower its ambulatory trip rate from $20.99 to $19.99, hoping to increase its trip volume, which Lynn noted was down from June 2016. (Dkt. #54, PageID 1076.) In response, Moore explained that several factors could be responsible for Enjoi's recent decrease in trip volume:

> Yesterday you missed run pull out and that seems to be the normal with Enjoi. It happen [sic] multiple times last week. Your staff is damaging your ability to get trips. Your [sic] have to be on the road and on time all the time or your [sic] going to loose [sic] money. Your on time performance isn't the

issue though, you run at about +90% each day. Basically you are in first place with another company. Your ambulatory rate is another issue, it's too high. I'll work with Matt on Monday concerning your price.

(Dkt. #60-15.)

On August 24, 2016, Hamilton offered to reduce Enjoi's ambulatory trip rate for a second time—this time to $17.77—because Enjoi blamed its decreased trip volume on its trip price. (Dkt. #60-14, PageID 2115.) Following several email exchanges on August 30, 2016, Moore equalized the trip rates for all providers in the EcoLane system to $20.00 for ambulatory trips and $21.00 for non-ambulatory trips. (Dkt. #56, PageID 1856.). Transdev asserts that these changes were made in response to Enjoi's complaints and intended to help standardize trip distribution between providers. Enjoi argues that the equalization of trip rates was intended to benefit Checker.

On the same day Moore equalized trip rates in the Ecolane system, Transdev issued Enjoi a notice a breach based on two alleged violations of the Transdev/Enjoi TPA. (Dkt. #54-28, PageID 1323.) Transdev asserted that Enjoi had failed to comply with vehicle inspection requirements (Dkt. #54, PageID 1078–79; Dkt. #54-28) and failed to report an accident. (Dkt. #54, PageID 1077; Dkt. #54-28.) This notice, however, did not state that Transdev intended to terminate the Transdev/Enjoi TPA based on these breaches.

On February 1, 2017, Enjoi requested to increase its ambulatory rate to $19.99 because it "was not getting enough trips" at its rate of $17.77. (Dkt. #54-47.) Moore denied this request on March 3, 2017, based on Enjoi's continued failure to comply with drug testing procedures. (Dkt. #54-57, PageID 1395.)

### 4. Enjoi Driver Certification and Drug Testing Issues

On September 29, 2016, Transdev requested that Enjoi submit re-certification documents for its drivers, including the results of random drug test results. (Dkt. #54, PageID 1079.) Transdev requested this information four additional times in the ensuing months before ultimately issuing Enjoi a notice of breach on January 23, 2017. (Dkt. #54, PageID 1081–85.) In the notice of breach, Transdev highlighted Enjoi's failure to provide access to the results of its random employee drug tests and failure to report two accidents occurring in early January 2017. (*Id.* at 1085; Dkt. # 54-46.) Transdev fined Enjoi fined $1,000 for these breaches (Dkt. #54-46.) Enjoi was the only provider to be fined by Transdev for breach of a TPA. (Dkt. #82-18, PageID 3253.) In its response, Enjoi asserts that it was not required to submit within 24-hours of occurrence a report for any such fine-generating event, and further alleges that Transdev did not enforce its reporting policy consistently among transportation providers. (Dkt. #81, PageID 2762–66.)

### 5. Termination of Transdev/Enjoi TPA and Aftermath

On February 23, 2017, some five months after Transdev initially requested the information, Transdev finally received access to Enjoi's random drug testing results. These results revealed that two of Enjoi's current drivers had failed random drug tests on November 30, 2017. (Dkt. #54, PageID 1087; Dkt. #54-51, PageID 1381.) When confronted with these results, Hamilton claimed that the drivers had been removed from service. (Dkt. #54, PageID 1089; Dkt. # 54-57, PageID 1395.) After learning about the failed drug tests, Transdev began preparations to terminate Enjoi's TPA. (Dkt. #54-51, PageID 1381.)

On February 27, 2017, Moore began circulating a draft letter of termination for Enjoi's TPA. (Dkt. #54, PageID 1088.) The final version of the termination letter was mailed to Hamilton on March 21, 2017, and stated that Enjoi's TPA was being terminated *without* cause "as permitted by Section II, Paragraph 3 of the Agreement ('Termination without Cause')." (Dkt. #54-62, PageID 1418.) The termination letter also stated that while Transdev was exercising its right to terminate the TPA without cause, Enjoi had breached the TPA in various ways that constituted grounds to support a *for-cause* termination. Specifically, the letter cited Enjoi's failure to report accidents, failure to comply with vehicle inspections, and failure to comply with drug testing procedures.[3]

In response to these alleged breaches, Enjoi asserts that it complied with Transdev's incident and accident reporting requirements while Checker did not. (Dkt. #81, PageID 2762–2766.) Enjoi also argues that it complied with the vehicle inspection requirements to the best of its ability given the limited resources of the approved inspection facility and that it did not believe it was required to comply with Transdev's drug testing requirements. (*Id.* at PageID 2766.)

Prior to receiving its formal letter of termination, Enjoi filed three racial discrimination complaints against Transdev with the Federal Transit Administration, Detroit's "Department of Civil Rights, Inclusion and Opportunity," and the Michigan Department of Transportation. (Dkt. #78, PageID 2614.) Following its formal termination in March 2017, Enjoi filed 20 additional complaints over the course of six months with

---

[3] Enjoi sought to exclude evidence of these alleged breaches in its motion in limine (Dkt. #69.) The court formally denied Enjoi's motion on the record at the parties' motion hearing commenced on February 8, 2019, noting that such evidence is plainly relevant to Enjoi's racial discrimination claims and the issue of Transdev's asserted nondiscriminatory reasons for termination.

various Michigan state agencies against Transdev, the City of Detroit, and other individuals involved in this case. All such complaints were ultimately dismissed by the respective agencies with which they had been lodged. (*Id.*)

## B. Procedural History

Paulette Hamilton was removed as a plaintiff by stipulated order on November 16, 2018. (Dkt. #64.) Less than a month later, Enjoi filed a second amended complaint containing 19 claims. This second amended complaint eliminated a claim against Defendant Martin Moore for tortious interference with a contract.

All parties have filed dispositive motions. Combined, these motions address each of Enjoi's remaining claims. Enjoi filed a partial motion for summary judgment (Dkt. #56) on its claims for fraudulent misrepresentation against Defendants Transdev and Moore (Counts XVI and XVII) and breach of contract against Defendant Transdev (Count XV). Transdev and Moore filed a motion for summary judgment (Dkt. #54) on Enjoi's Title VI discrimination claims (Counts II, IV), Equal Protection claims (Counts VII, VIII, X, XII), 42 U.S.C. § 1981 race discrimination claims (Counts XIII, XIV), breach of contract claim (Count XV), fraudulent misrepresentation claims (Counts XVI, XVII), and civil conspiracy claim (Count XIX). Finally, Defendant City of Detroit and Dirks filed a motion to dismiss or in the alternative for summary judgment (Dkt. #55) on Enjoi's Title VI claims (Counts I, III), Equal Protection claims (Counts V, VI, IX, XI), tortious interface claim (Count XVIII) and civil conspiracy claim (XIX).

## II. STANDARD

## A. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint that fails to state a claim upon which relief may be granted. Under the Rule, the court construes the complaint in the light most favorable to the plaintiff and accepts all well-pleaded factual allegations as true. *Barber v. Miller*, 809 F.3d 840, 843 (6th Cir. 2015). Federal Rule of Civil Procedure 8 requires a plaintiff to present in her complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint must provide sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "To state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Boland v. Holder*, 682 F.3d 531, 534 (6th Cir. 2012) (emphasis removed) (citing *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007)). Determining whether a complaint states a plausible claim for relief is "a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

### B. Motion for Summary Judgment

Summary judgment is appropriate when there exists no dispute of material fact and the moving party demonstrates entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment, the court considers all evidence, and all reasonable inferences flowing therefrom, in the light most favorable to the nonmoving party. *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015). The court may not make credibility determinations or weigh the evidence presented in support or opposition to a motion for summary judgment—only the finder of fact can make such determinations. *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014).

The movant has the initial burden of showing—pointing out—the absence of a genuine dispute as to any material fact; i.e., "an absence of evidence to support the nonmoving party's case." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986). The burden then shifts to the nonmoving party to set forth enough admissible evidence to raise a genuine issue of material fact for trial. *Laster*, 746 F.3d at 726 (citing *Celotex Corp.*, 477 U.S. at 324). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248; *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 391 (6th Cir. 2017). Not all factual disputes are material. A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of the claim "and would affect the application of the governing law to the rights of the parties." *Rachells v.*

*Cingular Wireless Employee Servs., LLC*, 732 F.3d 652, 660 (6th Cir. 2013). A "mere 'scintilla' of evidence" supporting the nonmoving party's position will not defeat a properly supported motion for summary judgment. *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 529 (6th Cir. 2012) (quoting *Liberty Lobby*, 477 U.S. at 251).

## III. DISCUSSION

### A. Title VI Claims (Counts I, II, III, IV)

Enjoi asserts claims for racial discrimination and retaliation under Title VI of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000d, against Transdev and City of Detroit. Title VI provides, "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

Enjoi's claims fail because Enjoi has not been "excluded from . . . the benefits of" a federally funded program or activity. While the MetroLift program would seem to qualify as a "program or activity" within the meaning of Title VI, Enjoi—a private business, not a disabled person— was not denied access to any facet of the MetroLift program by either Transdev or Detroit. Rather, Enjoi was denied the benefits of a continued City-funded, contractual relationship. In reaching this conclusion, the court is guided by the plain meaning of the statute, to which the court must assign controlling weight. *See Kelley v. E.I. DuPont De Nemours & Co.*, 17 F.3d 836, 842 (6th Cir. 1994). Persuasive authority from other district courts adds support to this interpretation. *See Mathis v. GEO Grp., Inc.*, No. 2:08-CT-21-D, 2009 U.S. Dist. LEXIS 132301, at *48 (E.D.N.C. Nov. 9, 2009) (holding that in the context of federal funding statute 29 U.S.C.

§ 794, a "program or activity" did not include a government procurement contract). Enjoi's Title VI claims fail as a matter of law because they do not involve a federally funded "program or activity." The court will grant defendants' motions for summary judgment on Counts I, II, III, and IV.

## B. Equal Protection Claims (Counts V, VI, VII, VIII, XI, X, XI, XII)

Enjoi asserts claims against all defendants under 42 U.S.C. § 1983 for racial discrimination and retaliation in violation of the Equal Protection Clause of the Fourteenth Amendment.

1. Retaliation Claims

Enjoi's retaliation claims fail as a matter of law because the Equal Protection clause of the Fourteenth Amendment does not prohibit retaliatory conduct. *Kuhn v. Washtenaw County*, No. 10-11191, 2012 WL 1229890, at *5 (E.D. Mich. Apr. 12, 2012) *aff'd*, 709 F.3d 612 (6th Cir. 2013); *R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 440 (6th Cir. 2005) ("[R]etaliation claim does not, however, arise under the Equal Protection Clause"); *Grossbaum v. Indianapolis-Marion County Bldg. Auth.*, 100 F.3d 1287, 1296 n.8 (7th Cir. 1996) (noting that the Equal Protection Clause "does not establish a general right to be free from retaliation[.]"); *Ratliff v. DeKalb County*, 62 F.3d 338, 341 (11th Cir. 1995) ("[N]o clearly established right exists under the equal protection clause to be free from retaliation."); *See Bradley v. Arwood*, No. 14-cv-12303, 2014 U.S. Dist. LEXIS 148827, at *33 (E.D. Mich. Oct. 20, 2014)(collecting cases).

2. Discrimination Claims

To establish its discrimination claims, Enjoi must prove "(1) that [it] was deprived of a right secured by the Constitution or federal laws; and (2) that the deprivation was

committed by a person acting under color of state law." *Toth v. City of Toledo*, 480 F. App'x 827, 831 (6th Cir. 2012). Failure to establish state action dooms an Equal Protection claim because the Fourteenth Amendment "erects no shield against merely private conduct, however discriminatory or wrongful." *Shelley v. Kraemer*, 334 U.S. 1, 13 (1948); *see also Black v. Barberton Citizens Hosp.*, 134 F.3d 1265, 1267 (6th Cir. 1998) (citing *Shelley*).

      *i.*      *Discrimination claims against Transdev and Moore*

Transdev and Moore are not state actors. Enjoi's discrimination claims against Transdev and Moore therefore fail as a matter of law.

The Sixth Circuit has adopted three tests to determine whether private entities qualify as state actors under § 1983: (1) the public function test; (2) the state compulsion test; and (3) the symbiotic relationship or nexus test. *Bell v. Mgmt. & Training Corp.*, 122 F. App'x 219, 222 (6th Cir. 2005). Defendants argue that they do not qualify as state actors under any of these tests while Enjoi argues that defendants do satisfy one: the public function test. (Dkt. #81, PageID 2805.)

The "public function test requires that the private entity exercise powers which are traditionally exclusively reserved to the state, such as holding elections." *Bell*, 122 App'x at 222 (quoting *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992)). Importantly, "that a private entity performs a function which serves the public does not make its acts state action. *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982). The Supreme Court has long recognized the limited scope of functions "exclusively" reserved to the state: "[w]hile many functions have been traditionally performed by governments, very few have been 'exclusively reserved to the State.'" *Flagg Bros., Inc.*

*v. Brooks*, 436 U.S. 149, 158 (1978) (internal citations omitted). In *Santiago v. Puerto Rico*, 655 F.3d 61, 69 (1st Cir. 2011), busing companies that provided transportation services for state-sponsored programs were deemed not a state actor despite assuming a state responsibility of providing public school transportation. *See also Black by Black v. Ind. Area School Dist.*, 985 F.2d 707 (3rd Cir. 1993) (finding a bus company was a private entity even though it carried out a state program at state expense); *Amisi v. Melick*, 2017 WL 1902703, at *5 (D.S.D. May 8, 2017) (holding that an employee of a private company hired by the state to operate the public transit system was not a state actor); *Mineo v. Transp. Mgmt. of Tenn., Inc.*, 694 F. Supp. 417, 424–25 (M.D. Tenn. 1988) (finding "no state action under [the public function] test because providing mass transit services is not an 'exclusive prerogative' of the City of Nashville."); *Arredondo v. Laredo Mun. Transit Sys.*, 581 F. Supp. 868, 870 (S.D. Tex. 1984) (same, mass transit).

In response, Enjoi asserts, in a conclusory manner, that Transdev is a state actor because the transportation of disabled individuals "as part of the ADA requirement for Defendant City" is an exclusively reserved public function. (Dkt. #81, PageID 2805.) Enjoi cites no legal authority to support its argument, nor does Enjoi even address defendants' legal authorities as just summarized.

In the Sixth Circuit, "mere employment with a state contractor does not convert the employer into a state actor." *Bell v. Mgmt*, 122 F. App'x at 222. Based on this binding authority, and the unrebutted persuasive authority cited by Defendants, the court concludes that Transdev and Moore are not public actors. The transportation program at issue is not one of the limited functions exclusively reserved to the state, even though in many ways it benefited the public. This conclusion ends the court's

inquiry into Enjoi's Equal Protection claims against Transdev and Moore. *See Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982) ("If the action . . . is not state action, our inquiry ends.") The court will grant Transdev and Moore's motion for summary judgment on Counts VII, VIII, X, XII.

ii.     *Discrimination Claims Against Detroit and Dirks*

To prevail on a § 1983 claim against a municipality,

> [A] plaintiff must show that the alleged violation occurred because of a municipal policy, practice, or custom; a municipality may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Beyond having to identify conduct properly attributable to the municipality, a plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged. In other words, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Brown v. Chapman*, 814 F.3d 447, 462 (6th Cir. 2016) (summarizing Supreme Court jurisprudence) (internal quotations and citations omitted).

The amended complaint proffers four allegedly discriminatory policies of Detroit, but Enjoi's response to the summary judgment motion, as well as Enjoi's arguments at the hearing, focused on two polices not alleged in the complaint: Detroit's policy of (1) terminating internal investigations; and (2) "making false findings once litigation over the matter begins." (Dkt. #86, PageID 3755.) It is not clear whether Enjoi also attributes these policies to Dirks.

Assuming, *arguendo*, that both policies existed as Enjoi claims, Enjoi fails to provide any evidence that these policies were racially discriminatory. Facially, these policies, as alleged, contain no racial or discriminatory component, and Enjoi makes no allegation, nor provides any admissible evidence, to suggest that the policies were

applied in a racially discriminatory manner. Instead, Enjoi argues that the polices were discriminatory based on a theory of disparate impact. (Dkt. #86, PageID 3760.) The Supreme Court, however, has explicitly rejected disparate impact claims under the Fourteenth Amendment. *Ricci v. DeStefano*, 557 U.S. 557, 627 (2009) ("The Equal Protection Clause, this Court has held, prohibits only intentional discrimination; it does not have a disparate-impact component."). Enjoi's Fourteenth Amendment claims against Defendant City cannot survive summary judgment in the absence of any direct evidence of intentional discrimination based on race.

Enjoi's discrimination claim against Dirks also fails for lack of any evidence of discriminatory action or intent. To survive summary judgment, Enjoi must put forth some evidence which attributes to Dirks specific conduct of intentional discrimination. *See Mann v. Helmig*, 289 F. App'x 845, 850 (6th Cir. 2008) (quotations omitted) ("A § 1983 complaint must allege that specific conduct by the defendant was the proximate cause of the constitutional injury."). Here, Enjoi offers no evidence of specific, discriminatory conduct attributable to Dirks, pointing only to conclusory allegations in its complaint and inadmissible hearsay. Enjoi argues that "it was Defendant Dirks that according to a statement from Manager Simone Lowe that informed Defendant Moore in a meeting to terminate Enjoi's contract." (Dkt. #86, PageID 3768.) Such statement contains multiple layers of hearsay rendering it insufficient to defeat a motion for summary judgment. *See Tranter v. Orick*, 460 F. App'x 513, 514 (6th Cir. 2012).  Accordingly, Enjoi's § 1983 claims against Defendant Dirks do not survive. *Warf v. United States VA*, 713 F.3d 874, 878 (6th Cir. 2013) ("To defeat a motion for summary judgment a plaintiff 'can no longer

rely on the conclusory allegations of its complaint.'") (quoting *Daily Press, Inc. v. United Press Intern.*, 412 F.2d 126, 134 (6th Cir. 1969)).

### C. 42 U.S.C. § 1981 (Counts XIII, XIV)

Enjoi asserts claims for racial discrimination and retaliation under 42 U.S.C. § 1981 against Transdev. Title 42 U.S.C. § 1981 ensures that all persons "shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens[.]" 42 U.S.C. § 1981. As explained below, Enjoi has, first, not offered sufficient evidence to survive summary judgment on its discrimination claim and, second, forfeited its retaliation claim by failing to respond to Transdev's arguments.

1. Discrimination Claim (Count XIII)

A plaintiff can recover under § 1981 using either a single-motive theory of discrimination or a mixed-motive theory. *See Griffin v. Finkbeiner*, 689 F.3d 584, 595 (6th Cir. 2012). A single-motive theory case involves action taken solely on the basis of a protected class whereas mixed-motive claims involve actions in which discriminatory animus was one of several motivating factors. Enjoi alleges discrimination claims under both theories, which the court will analyze in turn.

    *i.    Single-Motive Theory*

The elements to state a claim for discrimination or retaliation under § 1981 based on a single-motive theory are the same as the prima facia elements to state a claim under Title VII. *Crane v. Mary Free Bed Rehab. Hosp.*, 634 F. App'x 518, 521 (6th Cir. 2015) (collecting Sixth Circuit case law and noting that "the elements of a prima facie

18

case and the burden of proof are the same for claims arising under Title VII and §

1981.") Plaintiffs can prove discrimination claims with either direct or circumstantial

evidence. *Griffin*, 689 F.3d at 595; *Crane*, 634 F. App'x, at 521.

Direct evidence of discrimination is that which "does not require a factfinder to

draw any inferences in order to conclude that the challenged employment action was

motivated at least in part by prejudice against members of the protected group."

*Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003). Cases involving direct

evidence are rare because "because employers generally do not announce that they

are acting on prohibited grounds." *See Erwin v. Potter*, 79 F. App'x 893, 897 (6th Cir.

2003); *see also Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998) ("Such

[direct] evidence would take the form, for example, of an employer telling an employee,

'I fired you because you are disabled.'"). In the absence of direct evidence, a plaintiff

may rely on circumstantial evidence of discrimination. *See Rogers v. Henry Ford Health*

*Sys.*, 897 F.3d 763, 772 (6th Cir. 2018).

Here, there is no direct evidence of discrimination because there are no

allegations that Transdev stated that it was treating Enjoi differently based on its status

as a minority contractor. Enjoi mistakenly asserts that Transdev's alleged differentiated

treatment of Enjoi compared to white-owned Checker with respects to contractual

terms, payment, driver ratings, assignment of trips, and accident reporting constitutes

direct evidence of discrimination. (Dkt. #81, PageID 2782–85.) However, Enjoi offers no

evidence that Transdev directly indicated that it took these actions because of Enjoi's

protected status.[4] Thus, Transdev's discriminatory motivations for the cited actions arise from inference alone. Similarly, Enjoi's citation to inadmissible hearsay regarding an alleged statement by Moore that "he would quit before he would allow Enjoi to have the amount of volume that reducing their price would allow" (Dkt. #81, PageID 2784) requires an inference to suggest discriminatory intent.

For cases, such as this, based on circumstantial evidence of discrimination, courts apply the same *McDonnell Douglas* burden-shifting analysis used to analyze Title VII claims. *See Rogers*, 897 F.3d at 772. Under this framework, a plaintiff must first establish a prima facia case for racial discrimination by asserting: (1) membership in a protected class, (2) qualification for the job and satisfactory performance; (3) adverse employment action despite satisfactory performance; and (4) replacement of plaintiff by a person outside the protected class or less favorable treatment than similarly situated individual outside of plaintiff's protected class. *See Laster v. City of Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014) (analyzing Title VII discrimination claim). If the plaintiff can establish a prima facia case, "the burden shifts to the employer to proffer a legitimate, nondiscriminatory or nonretaliatory reason for its decision. If the employer does so, the plaintiff must then prove by a preponderance of the evidence that the reasons offered by the employer were pretextual." *Id.* (internal quotations omitted). A plaintiff can prove pretext by demonstrating "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were

---

[4] Enjoi relies on Gregory Lynn's testimony that "Checker was allowed these privileges because it was white owned and represented." (Dkt. #81, PageID 2783.) Lynn's assertions of purported personal belief regarding Transdev's motivations have no impact on whether the evidence cited qualifies as direct evidence of discrimination.

insufficient to motivate the employer's action." *Johnson v. Fifth Third Bank*, 685 F. App'x 379, 386 (6th Cir. 2017) (citing *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012)).

Transdev asserts that Enjoi fails to state a prima facia case. Transdev concedes that Enjoi satisfied the first two elements but disputes that the termination of Enjoi's TPA consituted adverse action. Transdev further argues that Enjoi fails to identify a triable issue as to whether it was treated differently from a similarly situated provider. (Dkt. #54, PageID 1109.)

In addition to the termination of its TPA, Enjoi argues that it suffered adverse action when Transdev issued notices of breach, assessed Enjoi liquidated damages, and removed Enjoi from its assigned routes. (Dkt. #81, PageID 2787.) Enjoi does not appear to argue that the evidence it cites as "direct evidence" of discrimination constitutes adverse employment actions—Enjoi's burden-shifting analysis focuses exclusively on Transdev's termination of its TPA, assessment of breach notices and liquidated damages, and removal of Enjoi from routes. (Dkt. #81, PageID 2786.) Transdev responds that these actions were not "adverse" as a matter of law because they were authorized under the TPA. (Dkt. #54, PageID 1109–1110; Dkt. #92, PageID 4250.) Enjoi does not respond to this argument.

The Sixth Circuit defines adverse action as:

> [A] materially adverse change in the terms or conditions of employment. An adverse employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. Adverse employment action requires an official act of the enterprise, a company act. The decision in most cases is documented in official company records, and may be subject to review by higher level supervisors. In addition, it typically inflicts direct economic harm.

*Laster v. City of Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014) (internal citations and quotations omitted). Written warnings and other disciplinary actions that do not impact pay do not constitute "adverse" action. *See Melton v. United States DOL*, 373 F. App'x 572, 575 (6th Cir. 2010) ) (holding that a written warning by itself was not adverse action); *Vernarsky v. Covenant Transp., Inc.*, No. 1:01-cv-305, 2003 U.S. Dist. LEXIS 18330, at *28 (E.D. Tenn. Apr. 15, 2003) (holding that a fine deducted from plaintiff's pay was an adverse employment action).

Under this standard, Transdev's breach notices do not qualify as adverse actions because the notices did not impact the terms of parties' relationship under the TPA. These notices did not seek to terminate the TPA, and Transdev was required to provide Enjoi the opportunity to cure only if Transdev terminated the TPA "for cause." However, the termination of the TPA, assessment of liquidated damages, and removal from trip routes could constitute adverse actions because these actions impacted Enjoi's earning potential.

Transdev advances several purported legitimate and nondiscriminatory reasons for the actions alleged: Enjoi's failure to report accidents, failure to comply with drug testing, and failure to comply with vehicle testing. (Dkt. #54, PageID 1111.) Enjoi offers a variety of explanations as to why it failed to timely report accidents, failed to complete vehicle inspections, and failed to disclose its

drug testing results; ultimately Enjoi concedes that each of these claims is factually true.[5]

Enjoi offers no evidence to suggest that Checker, or any other provider, was accused of having any problem in complying with drug testing requirements. Instead, it devotes considerable effort to explaining how Checker was not held to the same requirements as Enjoi, especially with accident reporting and vehicle inspections. (Dkt. #81, PageID 2762–77.) Enjoi's explanations fail because they do not analyze comparable events. The automobile accidents Enjoi failed to report are not comparable to the incidents, such as a driver arriving too early, that Enjoi asserts that Checker failed to timely report.[6] (Dkt. #92-11, PageID 4308). Enjoi's failure to complete vehicle inspections for nine of its vehicles in rotation is not comparable to Checker's failure to complete inspections for two of its vehicles that were not then in service. (Dkt. #92, PageID 4232–33.) Enjoi cannot establish that it was similarly situated to Checker with respect to accident reporting, vehicle inspection, or drug testing.

At the hearing, Enjoi conceded that the three issues cited by Transdev— failure to report accidents, failure to complete vehicle inspections, and failure to report drug test results— did occur. It persisted, however, in arguing that none of these issues justified the termination of its TPA. Noting that Enjoi advanced no

---

[5] Enjoi disputes the occurrence of one unreported accident cited in its termination letter but concedes that it failed to report accidents that occurred on August 18, 2017 and January 5, 2017. (Dkt. #92, PageID 4228.)

[6] Enjoi's citation to a sexual assault allegation made against a Checker's driver is similarly not comparable to the reporting requirements required for the types of accidents experienced by Enjoi.

supporting legal authority, the court must disagree. Enjoi cannot establish pretext because its purported evidence is insufficient as a matter of law to demonstrate that it was similarly situated to the allegedly favored provider, Checker. Enjoi fails to satisfy its burden to survive summary judgment on a single-motive racial discrimination theory.

     *ii.*     *Mixed-Motive Theory*

In its response to Transdev's motion, Enjoi timely raises the possible application of a mixed-motive theory of racial discrimination. *See Griffin v. Finkbeiner*, 689 F.3d 584, 594 n.7 (6th Cir. 2012) (explaining that evidence to support a mixed-motive theory of discrimination often emerges through discovery). The court notes the existence of conflicting Sixth Circuit precedent regarding whether the mixed-motive theory actually applies to § 1981 discrimination claims. *See Williams v. Zurz*, 503 F. App'x 367, 375 (6th Cir. 2012) (summarizing conflicting Sixth Circuit case law); *Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 757 (6th Cir. 2012) (applying mixed-motive theory to § 1981 claim); *Aquino v. Honda of America, Inc.*, 158 F. App'x 667, 676 (6th Cir. 2005) (holding that mixed-motive theory does not apply to § 1981 claims). In the interest of thorough disposition, the court assumes, *arguendo*, both that Enjoi sufficiently pleaded a mixed-motive theory of § 1981 racial discrimination in its amended complaint and that Sixth Circuit precedent recognizes the mixed-motive theory under § 1981.

In mixed-motive discrimination cases, a plaintiff's burden at summary judgment "is not onerous." *Griffin*, 689 F.3d at 596. Plaintiff must "produce evidence sufficient to convince a jury that: (1) the defendant took an adverse employment action against the plaintiff; and (2) race, color, religion, sex, or national origin was a motivating factor for

the defendant's adverse employment action." *Id.* at 595 (internal quotations omitted). Both direct and circumstantial evidence can support mixed-motive discrimination claims. *White*, 533 F.3d at 398 (citing *Desert Place, Inc. v. Costa*, 539 U.S. 90, 92, (2003)). The burden-shifting framework applied to single-motive discrimination claims based on circumstantial evidence does not apply in mixed-motive cases. *Id.* at 400. To survive summary judgment, a plaintiff must present "sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that race, color, religion, sex, or national origin was a motivating factor for the defendant's adverse employment decision." *Id.* at 402 (internal quotations and citations omitted).

As explained in the previous section, Enjoi alleges adverse action based on Transdev's termination of its TPA, assessment of liquidated damages, and removal of Enjoi from trip routes. However, Enjoi offers no admissible evidence to prove that these actions were motived in any part by Enjoi's minority status.

Enjoi relies on *White v. Baxter Healthcare Corp.*, 533 F.3d 381 (6th Cir. 2008) in advancing its mixed-motive claim. (Dkt. #81, PageID 2795–97.) In *White*, the court held that plaintiff adequately supported his Title VII racial discrimination claim under a mixed motive theory with evidence of disparaging comments made by his supervisor about African Americans, coupled with the fact that plaintiff's supervisor evaluated him under criteria different from other employees. This, the court found, was sufficient to demonstrate that defendants' actions were at least partially motived by plaintiff's race. *White*, 533 F.3d, at 404. Here, while baldly alleging at oral argument that Moore was "a racist," Enjoi offers no actual evidence to suggest that any Transdev employees acted on racial bias or harbored racial animus. Enjoi has provided no evidence of overt acts of

racial hostility, let alone any evidence of racially disparaging remarks. Nor does Enjoi offer evidence to suggest that it was singled out for differential treatment *because of* its minority status.

At the times relevant to this case, Checker was the only non-minority transportation provider. At the hearing, Enjoi conceded that the other minority providers were not subject to different treatment. Instead, Enjoi argued that it was singled out because it was larger, and therefore the only direct competitor of Checker in terms of capability. But as previously explained, the evidence does not support Enjoi's assertion that it was similarly situated to Checker. Enjoi provides no evidence to suggest that Checker experienced any comparable issues with drug testing requirements, inspection of vehicles in operation, or reporting of vehicle accidents. Instead, Enjoi's allegations of discriminatory motivation arise exclusively from transparent speculation and self-serving testimony, neither of which suffices to survive summary judgment. *See, e.g.*, *Garceau v. City of Flint*, 739 F. App'x 344, 346 (6th Cir. 2018) (affirming summary judgment for defendants in racial discrimination claim supported by nothing more than a single, stray comment, inadmissible hearsay, blatant speculation, and misrepresentation of the factual record); *Bradley v. Rhema-Northwest Operating LLC*, No. 16-2493, 2017 U.S. App. LEXIS 19522, at *13 (6th Cir. Oct. 3, 2017) ("[Plaintiff's] conclusory testimony is not sufficient to raise such a genuine issue of material fact as to whether she was treated less favorably than similarly situated employees outside the protected class."); *Alomari v. Ohio Dep't of Pub. Safety*, 626 F. App'x 558, 566 (6th Cir. 2015) ("[B]eyond pure speculation, [the witness's] assertions provide no evidence of a discriminatory motive behind the disparate treatment of Plaintiff[.] Consequently, no reasonable juror

could believe that discriminatory animus motivated Plaintiff's administrative investigation or termination.").

Under either theory of racial discrimination, Enjoi's claim fails because none of the record evidence suggests that Transdev treated Enjoi differently from another provider based on its minority status. Enjoi's argument related to the "cat's paw" theory of discrimination similarly fails for lack of any admissible evidence proving that Defendants acted on racial animus. (Dkt. #81, PageID 2797–98.) Accordingly, the court will grant Transdev's motion for summary judgment on Count XIII.

2. Retaliation Claim (Count XIV)

Enjoi alleges that Transdev retaliated against it by reducing Enjoi's trip rate to $20.00, terminating its TPA without cause, and reducing its trip volume. (Dkt. #71, PageID 2366.) To state prima facia case for retaliation, Enjoi must allege that (1) it participated in protected activity, (2) Transdev was aware of its protected activity, (3) Transdev subsequently took adverse employment action against Enjoi, and (4) a causal connection between the protected activity and the adverse employment action. *Laster v. City of Kalamazoo,* 746 F.3d 714, 730 (6th Cir. 2014) (quoting *Jones v. Johanns*, 264 F. App'x 463, 466 (6th Cir. 2007)).

Transdev first argues that Enjoi engaged in protected activity only by filing discrimination claims in March 2017. (Dkt. #54, PageID 1114.) Second, Transdev asserts that no causal connection exists between Enjoi's March discrimination claims and Enjoi's termination because Transdev began preparing to terminate Enjoi's TPA in February 2017. (*Id.* at PageID 1115.) Finally, Transdev argues that even if Enjoi could

state a prima facia retaliation claim, Transdev had legitimate, nondiscriminatory reasons for the adverse actions alleged based on Enjoi's performance. (*Id.* at 1115.)

Enjoi fails to address any of these arguments in its response to Transdev's motion for summary judgment. "The failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion." *See Everson v. Leis,* 556 F.3d 484, 496 (6th Cir.2009). Because Enjoi offers no evidence or argument in rebuttal, the court will grant Transdev's motion for summary judgment on the retaliation claim (Count XIV).

### D. Fraudulent Misrepresentation (XVI, XVII)

Enjoi asserts claims for fraudulent misrepresentation against both Transdev and Moore based on three alleged misrepresentations: (1) informing Enjoi that its trip volume decreased because its price was too high, (2) informing Enjoi that increasing its price would decrease its trip volume, and (3) stating that the term of the Enjoi/Transdev TPA would be five years. It appears to the court that Enjoi's second amended complaint references only the first allegation. (Dkt. #71, PageID 2368–70.) Because Enjoi's second and third allegations are not stated in its complaint, the court is not obligated to address them. *See Patterson v. Outback Steakhouse of Fla., LLC*, No. 17-5035, 2017 WL 9604534, at *3 (6th Cir. Oct. 25, 2017) ("[T]he district court properly refused to consider [plaintiff's] allegation, raised for the first time in her response to the motion for summary judgment[.]"). The court will nonetheless examine Enjoi's second and third allegations for more thorough disposition.

Under Michigan law, a claim of fraudulent misrepresentation requires the plaintiff to prove by convincing evidence: "(1) that defendant made a material representation; (2)

that it was false; (3) that when he made it he knew that it was false, or made it

recklessly, without any knowledge of its truth and as a positive assertion; (4) that he

made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted

in reliance upon it; and (6) that he thereby suffered injury." *Hi-Way Motor Co. v. Int'l*

*Harvester Co.*, 247 N.W.2d 813, 815 (Mich. 1976) (quoting *Candler v. Heigho*, 247

N.W.2d 813, 816 (Mich. 1919)). Promises of future action, mere opinions, and puffing

do not constitute materially false statements. *See Scott v. Harper Rec.*, 506 N.W.2d

857, 860 (Mich. 1993). Enjoi's claim fails as a matter of law because none of Enjoi's

proffered allegations constitute materially false statements, and Enjoi cannot

demonstrate its reliance on the challenged statements.

1. First Allegation

      Enjoi's first allegation—that Transdev, through its agents Moore and Wood,

informed Enjoi that its trip volume decreased because its price was too high—was

simply not a false statement. The August 2016 communications cited by Enjoi

demonstrate that Enjoi was told that price was one of several factors influencing its trip

volume. (Dkt. #60-15, PageID 2118; Dkt. #60-14, PageID 2113; *supra* Part I.A.3.)

When these communications were made, Enjoi had the highest ambulatory trip of all

Transdev's transportation providers (Dkt. #54, PageID 1075), and, according to Ecolane

Vice President Jason Ellis, the Ecolane software defaults to assigning trips based on a

formula that considers trip price. (Dkt. #80-8, PageID 2708.) Enjoi provides no evidence

to dispute these facts. Instead, Enjoi argued at the hearing that Jason Ellis's affidavit

testimony should not be considered pursuant to Federal Rule of Civil Procedure 37(c)(1)

because it was not previously disclosed. The court is not persuaded by Enjoi's

argument because Transdev's final witness list included as a potential witness an employee of EcoLane expected to testify about the EcoLane system, as well as several other individuals expected to testify about their familiarity with EcoLane. (Dkt. #41.) Any evidence related to the operation of EcoLane is hardly a surprise. Any error in a failure to include "Jason Ellis" as a witness representing the entity was harmless at worst as Defendants could amend their witness list before trial.

In its reply brief, Enjoi also argues (for the first time known to the court) that Transdev's failure to inform Enjoi that trip price no longer impacted trip volume after Moore equalized provider pricing in the Ecolane system constitutes fraudulent misrepresentation. (Dkt. #94, PageID 4435.) This new argument is both untimely raised and does not address the fact Enjoi's trip price impacted trip volume before Moore equalized provider trip rates in late August. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (quoting *Novosteel Sa v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002) ("Raising the issue for the first time in a reply brief does not suffice; reply briefs reply to arguments made in the response brief - they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration. . . As a matter of litigation fairness and procedure, then, we must treat [such issues] as waived.").

Enjoi requested to reduce its prices twice before Moore equalized the pricing of all providers in the Ecolane system in late August. *See supra* Part I.A.3. Thus, until Moore equalized the provider pricing in the Ecolane system, the Ecolane software did consider trip price in assigning trips to providers.  Enjoi offers no evidence to dispute

this fact. Accordingly, this allegation fails to state a fraud claim because the statement of Wood and Moore cited by Enjoi to supports its claim were accurate when made.

## 2. Second Allegation

Enjoi's second allegation—related to the impact of increasing its trip rate on trip volume—does not appear in Enjoi's amended complaint. Moreover, Enjoi provides no citation to the record to support this allegation. Nevertheless, statements regarding the possible outcome of an action cannot establish a misrepresentation claim. *See Scott v. Harper Rec.*, 506 N.W.2d 857, 860 (Mich. 1993) (noting that future promises and statements of opinion cannot constitute actionable misrepresentations). Furthermore, Enjoi clearly did not rely on any statements because it eventually increased its ambulatory trip rate from $17.77—twice. (Dkt. #80-11, PageID 2716–17; Dkt. #80-12, PageID 2719.) Thus, this allegation fails because Enjoi cannot prove the existence of a materially false statement nor its reliance on such a statement.

## 3. Third Allegation

Enjoi offers no admissible evidence to support its third allegation related to the five-year term of its TPA. Rather, Enjoi relies on a series of emails from two nonparties, Dick Alexander, a Transdev manager, and Wood, on July 28, 2017 in which Wood comments on Enjoi's poor performance and states that "Dan gave us the OK to fire Enjoi once we are confident we can handle their work with other providers." (Dkt. #60-21, PageID 2137.) Enjoi asserts that this email supports "an inference" that Transdev "never had any intention" of upholding the five-year term. (Dkt. #56, PageID 1866.) This email contains multiple levels of inadmissible hearsay and, therefore, cannot overcome Transdev's well-supported summary judgment motion. *See Tranter v. Orick*, 460 F.

App'x 513, 514 (6th Cir. 2012). Even if the court were to consider the contents of this email, Enjoi's reliance on such an "inference" is too tenuous to satisfy Enjoi's heightened burden of providing "clear and convincing evidence" to support a fraudulent misrepresentation claim. *See Hi-Way Motor Co. v. Int'l Harvester Co.*, 247 N.W.2d 813, 815 (Mich. 1976).

To survive summary judgment, Enjoi must provide more than a "mere scintilla of evidence" to support its claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, (1986). None of Enjoi's proffered misrepresentations rise beyond this level. Accordingly, Enjoi's motion for summary judgment on Counts XVI and XVII will be denied, and Defendant Moore and Transdev's motion for summary judgment on Counts XVI and XVII will be granted.

### E. Breach of Contract (XV)

Both Enjoi and Transdev move for summary judgment on the breach of contract claim. The elements of a breach of contract action in Michigan are: (1) the existence of a contract between Plaintiff and Defendant, (2) the terms of the contract, (3) that Defendant breached the contract, and (4) that the breach caused Plaintiff's injury. *Webster v. Edward D. Jones & Co.*, 197 F.3d 815, 819 (6th Cir. 1999). In analyzing the terms of a contract, the plain language of the agreement controls. *See Wilkie v. Auto-Owners Ins. Co.*, 664 N.W.2d 776, 787 (Mich. 2003) (citing *Singer v. Am. States Ins.*, 631 N.W.2d 34, 40 n.8 (Mich. Ct. App. 2002)).

Enjoi alleges that Transdev materially breached the TPA in several ways while Transdev asserts that none of Enjoi's allegations, even if true, constitute breaches of the TPA. The first two elements are not in dispute. The parties entered into the TPA on

June 20, 2016, and the contract includes the two specific provisions challenged by Enjoi— the anticipated trip volume (Attachment A: "Monthly trip volumes are anticipated to remain consistent with current monthly volumes, however, Transdev offers no guarantee, warranty or other representation regarding any expectancy of future trip volumes") and the five-year term (Section I.II). (Dkt. #54-16, PageID 1253–54, 1264; Dkt. #56, PageID 1869; *see also supra* Part I.A.2.)

In its motion, Enjoi alleges that Transdev breached the TPA in the following ways: (1) "altering the prices in the Ecolane system to assure that Enjoi's volume would not increase", (2) changing the driver ratings "so that Checker's divers would receive the routed calls," (3) disclosing "proprietary information regarding Enjoi's pricing to Checker," (4) limiting and transferring Enjoi's routes to Checker, (5) "plotting to terminate Enjoi's contract after fraudulently entering into the agreement," (6) failing to provide Enjoi with a notice to cure, and (7) terminating the agreement without cause. (Dkt. #56, PageID 1870–71.) Based on the plain language of the TPA, none of these allegations constitute a breach.

Enjoi's first, second, and third factual allegations do not constitute breaches because each fact, assuming it to be true, does not violate any provision of the Enjoi/Transdev TPA. *See Ries v. Evening News Asso,* 122 N.W.2d 663, 666 (Mich. 1963) ("[P]laintiff . . . has done that which is not prohibited by the contract, that which may reasonably be said to be permissible under it[.]"); *Waun v. Universal Coin Laundry Mach.*, No. 267954, 2006 Mich. App. LEXIS 2821, at *41 (Mich. Ct. App. Sept. 26, 2006) (holding that no breach occurred when defendant did not perform actions he was not required to perform under the contract).

Enjoi's fourth allegation of breach fails because the TPA plainly states that the distribution of work is at "the sole discretion" of Transdev and that Transdev "offers no guarantee, warranty or other representation regarding any expectancy of future trip volumes." (Dkt. #54-16, PageID 1254, 1264.) Transdev never promised to ensure a fixed amount of trips to Enjoi or any other provider. Accordingly, Enjoi's failure to realize consistent trip levels is not an actionable breach. *See Rowe v. Montgomery Ward & Co.*, 473 N.W.2d 268, 285 (Mich. 1991) ("It is black letter law that enforceable obligations may arise from 'explicit' promises.").

Enjoi's fifth allegation essentially repeats its earlier, unsuccessful fraudulent misrepresentation claim. As was the case with Enjoi's fraudulent misrepresentation claim, Enjoi's allegation in this context fails because Enjoi offers no evidence in support.

Finally, Enjoi's sixth and seventh allegations fail because the TPA specifically authorized Transdev to terminate the contract without cause. Under the plain language of the contract, Transdev need not provide Enjoi the opportunity to cure if it terminates the TPA without cause. *See supra* Part I.A.2. The instant termination letter clearly states that Transdev elected to terminate the TPA without cause. Perplexingly, Enjoi argues that Transdev's inclusion in the letter of additional potential grounds of for-cause termination transforms its termination into a termination for cause. (Dkt. #81, PageID 2774.) The case Enjoi cites for this assertion, *Farha v. Cogent Healthcare of Mich., P.C.*, 164 F.Supp.3d 974 (E.D. Mich. 2016), is not applicable.

In *Farah*, plaintiff's termination letter was ambiguous as to whether plaintiff was terminated with or without cause. Here, Enjoi's termination letter could not be more plain in stating that the contract was being terminated "as permitted by Section II, Paragraph

3 of the Agreement ('termination without cause').". (Dkt. #54-62, PageID 1418.) The fact that Transdev's termination letter also described additional grounds for termination does not transform its no-cause termination into termination for cause. *See Elliott & Frantz, Inc. v. Ingersoll-Rand Co.*, 457 F.3d 312, 320 (3rd Cir. 2006) ("[I]t would be remarkable to hold that in order to preserve its rights to terminate a contract without cause, a party is obliged to withhold the actual reason for its action from the other party[.]"; *Link-Belt Constr. Equip. Co., L.P. v. Rd. Mach. & Supplies Co.*, No. 10-103, 2011 U.S. Dist. LEXIS 41404, at *15 (E.D. Ky. Apr. 15, 2011) ("Thus, the fact that [plaintiff] provided an explanation . . . regarding its reasons for terminating its relationship does not mean that [plaintiff] waived its right to end the at-will relationship without cause."). Under the plain and unambiguous language of the TPA, Transdev was entitled to—and did—terminate the TPA without cause and without providing Enjoi the opportunity to cure.

In its reply brief, Enjoi alleges, for the first time, that Transdev's termination of the TPA breached the implied covenant of good faith implicit in all contracts. (Dkt. #94, PageID 4436.) This argument is not timely and therefore need not be considered. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (quoting *Novosteel Sa v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002). This argument fails as well on the merits because an implied duty of good faith cannot preempt Transdev's contractual right to terminate the TPA without cause. *See Gen. Aviation v. Cessna Aircraft Co.*, 915 F.2d 1038, 1041 (6th Cir. 1990) (internal quotations omitted) ("[T]he obligation of good faith cannot be employed, in interpreting a contract, to override express contract terms.").

Enjoi's allegations of breach are either not prohibited by the TPA or plainly authorized therein. Because Enjoi has not proffered any evidence of a material breach, its contract claim fails as a matter of law. Accordingly, the court will deny Enjoi's motion for summary judgment on Count XV and grant Defendant Transdev and Moore's motion for summary judgment on Count XV.

### F. Tortious interference (XVIII)

Enjoi alleges that Dirks tortuously ordered Moore to terminate the Transdev/Enjoi TPA. In support, Enjoi asserts, without citation to any evidence, that "Defendant Dirks made multiple requests pressuring Defendant Transdev to terminate Enjoi's TPA." (Dkt. #86, PageID 3777.) Enjoi may be relying on the alleged statements of Simone Lowe for this claim, but such evidence is inadmissible hearsay and will not be considered. *See supra* Part III.B.2.ii. To survive summary judgment, Enjoi must proffer admissible evidence to establish the existence of a dispute of material fact, and it fails to do so.

Even if Enjoi could provide evidence of Dirks's interference with the Enjoi TPA, the claim would fail because Dirks, as Director of the DDOD, is entitled to governmental immunity under the Michigan Governmental Tort Liability Act. *See* Mich. Comp. Laws § 691.1407(5). Dirks's alleged conduct occurred within his role Director of the DDOD, not as a private citizen, because it related to the administration of a DDOT program. (Dkt. #93-2, PageID 4388.) Decisions involving the hiring and firing of transportation subcontractors fall within Dirks's assigned duty to oversee transportation contracts "and related personnel." (*Id.*) Because Dirks is a high-ranking appointed official, he is entitled to governmental immunity regardless of his alleged motivations. *See American Transmissions, Inc. v. Attorney General*, 560 N.W.2d 50, 52 (Mich. 1997) ("[T]he highest

executive officials of all levels of government are absolutely immune from all tort liability whenever they are acting within their executive authority."); *Petipren v. Jaskowski*, 833 N.W.2d 247, 261 (Mich. 2013) ("[A]s we have made clear, an actor's intent and motivation have no bearing on the scope of his or her executive authority under MCL 691.1407(5)."). Accordingly, the court will grant defendants' motion for summary judgment on Count XVIII.

### G. Civil Conspiracy (XIX)

Although the complaint does not specify the precise theory of Enjoi's civil conspiracy claim, Enjoi's representation at the motion hearing and responsive briefing (Dkt. #81, PageID 2807) indicate that its claim arises under 42 U.S.C. § 1983. As a private citizen, Moore cannot be held liable under 42 U.S.C. § 1983, but persuasive authority suggests that Moore may be liable for civil conspiracy under § 1983 if he acted in concert with a state actor. *See Briley v. California*, 564 F.2d 849, 858 (9th Cir. 1977) ("It is clear that defendants who were engaged in purely private conduct may be found liable under § 1983 if it is established that they have acted in concert with another party against whom a valid claim can be stated."). The court has dismissed all of Enjoi's claims against Dirks, holding that Enjoi's racial discrimination claim against Dirks failed for lack of any evidence of discriminatory intent. Accordingly, Enjoi's civil conspiracy claim also fails for lack of any state action.

### IV. CONCLUSION

Enjoi's Title VI claims fail because Enjoi was not excluded from a federally funded program or activity, and its § 1983 retaliation claims and § 1983 claims against Defendant Transdev fail as a matter of law. To satisfy its burden on summary judgment,

Enjoi must present some evidence to support its remaining claims—it cannot rely on the allegations in its complaint or mere conjecture to survive. In considering the parties' filings and arguments at the hearing, as explained herein, the court is left with no evidence on point in support of Enjoi's discrimination, conspiracy, and state law claims, only conclusory allegations devoid of factual corroboration. In the absence of admissible evidence to substantiate its claims, Enjoi cannot survive summary judgment. Accordingly,

IT IS ORDERED that Enjoi's partial motion for summary (Dkt. #56) is DENIED, Defendants City of Detroit and Dirks's motion to dismiss or in the alternative motion for summary judgment (Dkt. #55) is GRANTED, and Defendants Transdev and Moore's motion for summary judgment (Dkt. #54) is GRANTED. This ruling disposes of all Enjoi's remaining claims and terminates the case. A separate judgment will issue.

s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, February 21, 2019, by electronic and/or ordinary mail.

s/Lisa Wagner
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\HEK\Civil\17-13052.ENJOI.title.vi.1983.1981.msj.HEK.RHC.2.docx